IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PACTIV CORPORATION,                    )
                                       )
          Plaintiff,                   )
                                       )
                                       )
     v.                                ) Case 14 CV 2490
                                       )
                                       )
NATIONAL   UNION   FIRE   INSURANCE    )
COMPANY,                               )
                                       )
          Defendant.                   )

MEMORANDUM OPINION AND ORDER

In this action, plaintiff Pactiv Corporation seeks

declarations that it is an additional insured under the

Retrospectively Rated Insurance and Indemnification Policy No GL

173-82-17 ("the Policy") that defendant issued to J.B. Hunt

Transport, Inc., and that the Policy requires defendant National

Union Fire Insurance Company to defend and indemnify plaintiff

with respect to a lawsuit brought against plaintiff by David and

Cynthia Montgomery (the "Underlying Action").[1]   Before me is

---

[1] I emphasize for clarity that although the allegations in the
present complaint identify J.B. Hunt Transport, Inc., ("J.B.
Hunt") as a party, and plaintiff's prayer for relief purports to
seek declarations regarding the obligations of both defendant and
J.B. Hunt, National Union is the only defendant in this case.
Indeed, not only is National Union the only defendant named in the
case caption, but National Union's notice of removal--to which
plaintiff did not object--states that it is the "sole defendant
named" in the removed action.   Accordingly, nothing in this

defendant's motion for summary judgment, which I grant for the reasons that follow.[2]

I.

In the Underlying Action, David Montgomery and his wife Cynthia alleged that David was injured while attempting to open the rear doors of a J.B. Hunt trailer in the course of performing his duties as a "spotter" for Jewel Foods.   As a spotter, David was responsible for transporting trailers loaded with grocery or other items to a warehouse dock, then opening the trailer's rear door so that the goods could be unloaded.   Other workers—not spotters—were then responsible for unloading the trailer.

According to the complaint and David's testimony in the Underlying Action, on February 5, 2003, David was injured when the rear doors of a J.B. Hunt trailer "sprung open" as he attempted to open them after backing the trailer up to a warehouse dock at Jewel's Melrose Park facility. David explained that when he unlatched the trailer door, it came "flying out" at him. Def.'s

decision should be read to address any rights or obligations J.B. Hunt may have with respect to either party.

[2] Plaintiff's submission at Docket No. 18 is titled "Response by Pactiv Corporation in Opposition to Motion by Defendant National Union Fire Insurance Company for Summary Judgment *and Pactiv Corporation's Motion for Summary Judgment*." (Emphasis added) But plaintiff did not file that document as a motion, nor did it submit a statement of undisputed facts as a moving party pursuant to Local Rule 56.1(a).   Accordingly, defendant's is the only motion currently pending on the docket.   These omissions are immaterial, however, since, for the reasons discussed in this decision, the arguments plaintiff raises do not support a judgment in its favor.

2

L.R. 56.1 Stmt., Exh. B at 3; Exh. C at 63:18-64:8.  After the

door hit David and pushed him back, David struggled to close the

door to avoid being buried by the product inside.  David was

ultimately able to secure the door closed, but he injured his

shoulder and lower back in the process.  Def.'s L.R. 56.1 Stmt.,

Exh. C at 67:8-68:17; 74:8-20.  The complaint in the Underlying

Action asserted that David's injury was "a direct and proximate

result" of J.B. Hunt's negligence in failing to load the trailer

properly, and/or in failing to equip the trailer with airbags or

load bars to prevent loads from shifting during transport or

falling out of the back of the trailer.  Def.'s L.R. 56.1 Stmt.,

Exh. B at ¶ 8-9.  The Underlying Action was settled in or around

October of 2013.[3]

    In February of 2014, plaintiff brought this action, captioned

"Complaint for Declaratory Judgment and Breach of Contract," in

the Circuit Court of Cook County.  Defendant removed the case to

this court on April 8, 2014.  Notwithstanding its caption, the

complaint's only count is for declaratory relief only, and, while

---

[3] Plaintiff does not dispute defendant's statement that the
Underlying Action was settled on October 7, 2013.  Pl.'s L.R. 56.1
Resp. to ¶ 22.  DN 20.  Nevertheless, the statement is not
supported by defendant's citation to "Exh. B, ¶ 5."  Exhibit B to
defendant's L.R. 56.1 Statement is the Montgomery's First Amended
Complaint.  No other "Exh. B" that I have identified in the record
contains information about the parties' settlement.  Nevertheless,
documents attached to the Notice of Removal reflect that David and
Cynthia Montgomery signed settlement and release agreements on
September 30, 2013 and on October 16, 2013.  See DN 1-2 at 7, 4.

certain allegations refer to a contract between plaintiff and non-party J.B. Hunt, the complaint does not allege the existence or breach of any contract between the parties.

The specific relief the complaint seeks is a declaration: a) that plaintiff is an additional insured under "the CGL coverage part of the Policy"; b) that defendant has a duty to defend plaintiff in the Underlying Action; c) that defendant has a duty to indemnify plaintiff in the Underlying Action; and d) that defendant is "obligated to reimburse" plaintiff "for all of their (sic) post-tender defense costs it incurred in its defense of" the Underlying Action.

The Policy provides two distinct types of coverage. The first, "Coverage A," is captioned "Commercial Automobile Liability," and covers, *inter alia*, "damages because of 'bodily injury'…caused by an 'accident'…resulting from the ownership, maintenance or use of a covered 'auto.'" Def.'s L.R. 56.1 Stmt., Exh. A at 2. The second, "Coverage B," is captioned "Commercial General Liability," and likewise covers "bodily injury," but it excludes from coverage any liability for

> "'bodily injury' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any injured. Use includes operation and 'loading or unloading.'"

Def.'s L.R. 56.1 Stmt., Exh. A at 6 (the "Auto Exclusion"). Coverage B also contains a provision titled "Obligation to Defend"

4

which reads: "We have no obligation to investigate or defend any claim or suit against you." *Id*. at 9.

Defendant's motion for summary judgment raises three arguments. First, defendant asserts that plaintiff does not qualify as an additional insured under Coverage A and cannot recover anything pursuant to that portion of the Policy. Second, defendant insists that the Underlying Complaint asserted claims falling squarely into the Auto Exclusion of Coverage B, so plaintiff likewise has no entitlement to coverage under that portion. Finally, defendant argues that pursuant to the Obligation to Defend provision of Coverage B, it had no duty in any event to defend plaintiff in the Underlying Action.

Plaintiff's response concedes the first and third arguments, leaving only the question of whether plaintiff is entitled, as an additional insured under Coverage B of the Policy, to indemnification for its settlement of the Underlying Action.

## II.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the

court which are appropriate subjects for disposition by way of summary judgment." *Crum and Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E. 2d 1073, 1077 (Ill. 1993). My "paramount objective" in construing the Policy is to effectuate the intent of the parties as expressed by the words used in the agreement. *Oakley Transport, Inc. v. Zurich Ins. Co.*, 648 N.E. 2d 1099, 1106 (Ill. App. Ct. 1995). I must give unambiguous words their plain and ordinary meaning, and construe the policy as a whole, taking into account "the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." *Crum and Forster,* 620 N.E. 2d at 1078. While insurance contracts are construed liberally in favor of coverage, and ambiguities in the terms used must be resolved in the insured's favor, "if the provisions of the policy are clear and unambiguous, the provisions will be applied as written." *Oakley Transport*, 648 N.E. 2d at 1106.

Defendant argues that the Auto Exclusion unambiguously excludes coverage for the Underlying Action, since the allegations in that suit plainly assert a bodily injury arising out of the "use" of an "auto." Plaintiff does not dispute that the trailer involved in David Montgomery's accident falls within the Policy's definition of "auto" but argues that the Montgomerys' negligence claim based on J.B. Hunt's failure to equip the trailer with

airbags or load bars is unrelated to the trailer's "use." Plaintiff also argues that David's actions at the time of the accident are outside the scope of the Auto Exclusion's definition of the term "use." Plaintiff emphasizes, in this connection, that the Policy defines "use" as "operation" or "'loading and unloading.'" In plaintiff's view, Illinois law requires that the term "operation," which the Policy does not define, be construed to exclude actions that occur while the auto is stationary.

The case on which Plaintiff relies most heavily for its first argument—that J.B. Hunt's failure to equip the trailer with certain features is covered, non-auto-related conduct—is *United States Fidelity & Guaranty Co. v. State Farm Mut. Auto Ins. Co.,* 437 N.E. 663 (Ill. App. Ct. 1982) ("*USF&G*"). In *USF&G*, the Illinois Appellate Court held that the insurer of a daycare center had a duty to defend the center against claims relating to injuries a child suffered when she fell from a vehicle driven by a daycare center employee. Although the policy at issue contained an auto exclusion barring coverage for the underlying plaintiff's claims for negligent operation of the vehicle, the court concluded that her additional claims for negligent operation of the daycare center and failure to provide adequate supervision for the children were "separate and distinct from any allegations relating to the negligent operation of the vehicle," and were "potentially within the coverage of the policy." *Id*. at 666.

In a subsequent, related appeal, the court explained that:

> If a proximate cause of an injury is within the included coverage of an insurance policy, the included coverage is not voided merely because an additional proximate cause of the injury is a cause which is excluded under the policy. Thus, in order for an injury to be excluded from coverage under an insurance policy, the injury must have been caused solely by a proximate cause which is excluded under the policy.

*U.S. Fidelity and Guar. Co. v. State Farm Mut. Auto. Ins. Co.*, 504 N.E. 2d 123, 125 (Ill. App. Ct. 1987). The court concluded that because an excluded act was not the "sole proximate cause" of the injury, the claims were not excluded from coverage. *Id.*

In later decisions, however, the Illinois Appellate Court called the reasoning of *USF&G* into doubt for its reliance on tort principles to analyze insurance coverage disputes, which are governed by the law of contracts. *See Allstate Ins. Co. v. Smiley*, 659 N.E. 2d 1345, 1354 (Ill. App. Ct. 1995); *Oakley Transport, Inc. v. Zurich Ins. Co.*, 648 N.E. 2d 1099, 1106 (Ill. App. Ct. 1995) ("tort liability on the part of the insured establishes contractual liability on the part of the insurer only where the policy affords coverage, and that determination is subject to the rules of contract construction, and not tort principles."). Indeed, although *USF&G* has not been overruled, Illinois courts have essentially stopped relying on it, especially in wake of the Supreme Court of Illinois' decision in *Northbrook*

*Property and Cas. Co. v. Transportation Joint Agreement*, 741 N.E.

2d 253 (Ill. 2000).[4]

*Northbrook Property* involved claims arising out of an

accident in which a school bus collided with a METRA train,

resulting in student injuries and deaths. The school district

defendants tendered the defense of the ensuing lawsuits to the

plaintiff pursuant to their commercial liability policy, which

contained an auto exclusion similar to the one at issue here. The

trial court concluded that the underlying claims were within the

auto exclusion and granted summary judgment for the insurer. The

Illinois Appellate Court reversed, "holding that the students'

lawsuits against the school districts adequately alleged that the

injuries could have arisen from causes other than use or operation

of the bus, such as failure of the school districts to adequately

---

[4] While a small handful of decisions have since cited *USF&G*
cautiously for the proposition that auto exclusions do not bar
claims "if the liability of an insured arises from negligent acts
which constitute non-auto-related conduct," *Mount Vernon Fire Ins.
Co. v. Heaven's Little Hands Day Care*, 795 N.E.2d 1034, 1041 (Ill.
App. Ct. 2003)(quoting *USF&G*, 437 N.E. 2d at 666, but
acknowledging that its reasoning had been called into doubt), even
those cases do not support plaintiff's position here. For
example, in *Mount Vernon*, where the underlying action asserted
negligence based on a daycare employee's failure to remove a nine
month old baby from the daycare center's parked van for nine
hours, the court determined that the alleged conduct was not auto-
related because it was not "reasonably consistent with the
inherent nature of the vehicle." *Id*. In this case, by contrast,
the insured's alleged omission—failure to equip the trailer with
airbags and load bars—relates directly to the vehicle's inherent
use.

plan and inspect bus routes and warn bus drivers of potential hazards." 741 N.E. 2d at 254. The Supreme Court of Illinois reversed, explaining that these claims were "nothing more than rephrasings of the fact that the students' injuries arose from the school districts' use or operation of a motor vehicle." *Id*.

Similarly, here, regardless of any negligence by J.B. Hunt in equipping the trailer, David's injuries plainly arose from its "use or operation." Plaintiff's attempt to narrow the definition of "operation" either to "driving," or to conduct that takes place while the vehicle is in motion, finds no support in Illinois law. To the contrary, in *Heritage Ins. Co. of Am. v. Phelan*, 321 N.E.2d 257 (Ill. 1974), the Supreme Court of Illinois held that a driver who had stopped to repair a car remained its "operator" while the car was parked, noting that "abundant authority" supported this conclusion. *Id*. at 261 (citing cases). In *Collins v. Econ. Fire & Cas. Co.*, 422 N.E.2d 74, 75 (Ill. 1981), the court reiterated that "operating" is broader than "driving," and held that the "better definition of the term 'operating' is that it involves personal physical management of the automobile by the person in question." *Id*. at 75. Under either of these definitions, Montgomery was unquestionably "operating" the trailer when he opened its rear door moments after backing it up to the warehouse dock.

Cases from other jurisdictions support this conclusion. For example, in *Great West Cas. Co. v. Terminal Trucking LLC*, 803 F. Supp. 2d 389, 393 (D. S.C. 2011), the court concluded that an auto exclusion materially identical to the one in this case excluded coverage for a personal injury suit in which the underlying plaintiff was injured when cargo fell on him from within a parked trailer after he lifted a latch on the trailer door. Plaintiff's half-hearted response—that cases from other jurisdictions are "not controlling"—is all the less persuasive in view of the apparent accord among courts in Illinois and elsewhere that "use or operation" of an "auto" includes activities that, like David's, reveal an individual's "physical management" of the vehicle.

## III.

For the foregoing reasons, defendant's motion for summary judgment is granted.

**ENTER ORDER:**

_____
        **Elaine E. Bucklo**
    United States District Judge

Dated: February 3, 2015

11